**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VIRGINIA SCHMIDT-RESS, ) | |
| ) | CASE NO.   4:09-CV-01502 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Virginia Schmidt-Ress ("Schmidt-Ress") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Schmidt-Ress's claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

**I. Procedural History**

On September 16, 2005, Schmidt-Ress filed an application for SSI alleging a disability

onset date of April 7, 1989, and claiming that she was disabled due to diabetes, depression, and panic attacks. Her application was denied both initially and upon reconsideration. Schmidt-Ress timely requested an administrative hearing.

On November 21, 2007, an Administrative Law Judge ("ALJ") held a hearing during which Schmidt-Ress, represented by counsel, testified. George J. Starsota testified as the vocational expert ("VE"). On March 28, 2008, the ALJ found Schmidt-Ress was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Born on December 30, 1978, and age twenty-nine (29) at the time of her administrative hearing, Schmidt-Ress is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Schmidt-Ress earned a GED and performed past relevant work as a waitress, hostess/cashier, sandwich maker, laborer, bakery sales clerk, and a medical transcriber. (Tr. 30.)

### *Medical Evidence*

Schmidt-Ress began seeing Theodore Chrobak, D.O., in 2001. (Tr. 102.) The record contains treatment records from 2002 through 2004 which are difficult to decipher. (Tr. 142-194.) On January 22, 2004, records from the Columbiana Counseling Center, which included information provided by Schmidt-Ress, indicate that Dr. Chrobak was her family physician. (Tr. 200.) She also noted that she had insulin dependent diabetes since April of 1989. *Id*.

On January 21, 2004, Schmidt-Ress began counseling at the Columbiana County Counseling Center to help her deal with the issues of her divorce and losing temporary custody of her children. (Tr. 210.) She was seen by Patricia Taylor, L.P.C. on numerous occasions. (Tr. 197-212.)

On February 9, 2004, Marianne N. Collins, Ph.D., completed a Mental Residual Functional Capacity Assessment form. (Tr. 233-36.) Dr. Collins noted that Schmidt-Ress was not significantly limited in fourteen of twenty categories, was moderately limited in five categories, and was markedly limited in one category. (Tr. 233-234.) She was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentrate for extended periods, to complete a normal workday without interruptions from psychologically based symptoms, and to respond appropriately to changes in the work setting. *Id*. She was markedly limited in her ability to interact appropriately with the general public. (Tr. 234.)

On January 17, 2005, Ms. Taylor, Schmidt-Ress's clinical therapist, wrote a letter at her request. (Tr. 212.) She felt that Schmidt-Ress's mental health issues, including stress, anxiety, and depression appeared to exacerbate her serious physical health conditions and were prohibitive to securing and holding employment at that time. *Id*.

On January 20, 2005, Schmidt-Ress was interviewed by Claudia Johnson Brown, Ph.D., at the request of the Bureau of Disability Determination. (Tr. 213-218A.) Dr. Brown found that Schmidt-Ress was moderately depressed and anxious, and that her affect was labile. (Tr. 216.) She was oriented to person, place, and time, and was able to concentrate. (Tr. 215.) Her immediate recall was mildly impaired, her recent memory was moderately impaired, and her

3

remote memory was grossly intact. (Tr. 215-18.) Her insight in general was fair, and her judgment was "marginally adequate for her gross safety needs." *Id.* Dr. Brown opined that Schmidt-Ress was able to understand and remember one-step instructions, but, due to the mild impairment in her immediate recall ability, felt she would require additional rehearsal and repetition in order to remember multi-step instructions. *Id.* Dr. Brown noted that Schmidt-Ress did not have the ability to withstand the normal stressors of the work environment due to her mood instability. (Tr. 218A.) Schmidt-Ress was assigned a Global Assessment of Functioning ("GAF") score of 50.[1] *Id.*

On February 9, 2005, Dr. Collins completed a Psychiatric Review Technique form. (Tr. 219-32.) Dr. Collins concluded that Schmidt-Ress had symptoms of affective disorders, anxiety-related disorders, and personality disorders. (Tr. 219.) In the category of affective disorders, Dr. Collins noted that Schmidt-Ress had bipolar disorder; with her most recent episode being moderately depressed. (Tr. 222.) In the category of anxiety-related disorders, she was noted to have a panic disorder without agoraphobia. (Tr. 224.) In the category of personality disorders, she was noted to have a personality disorder, not otherwise specified (NOS). (Tr. 226.) Dr. Collins found Schmidt-Ress had the following functional limitations: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration. (Tr. 229.)

---

[1] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

On October 4, 2005, Schmidt-Ress was seen by Edmund Mitchell, M.D. (Tr. 237.) Her blood sugar was 372, which he characterized as under "exceedingly poor control." *Id*. A hemoglobin test suggested that her blood sugar had been poorly controlled for at least the last three months. *Id*. She had poor visual acuity and was referred to an ophthalmologist. *Id*. Her hearing was decreased and she was referred to an ear, nose, and throat specialist. *Id*. Finally, she was referred to an endocrinologist for her diabetes. *Id*.

On October 12, 2005, Schmidt-Ress again was seen by Dr. Mitchell. (Tr. 252.) Dr. Mitchell felt that Schmidt-Ress needed a psychiatric evaluation, because "[s]he has what appears to me to be an affect which is inappropriate to her stated complaints." *Id*. Schmidt-Ress would not meet with Dr. Corolla, an endocrinologist recommended by Dr. Mitchell, because she did not "see eye to eye" with Dr. Corolla on her treatment. *Id*.

On December 7, 2005, Schmidt-Ress was again seen by Dr. Brown for another clinical interview. (Tr. 239-46.) Her cigarette smoking was reported to be one pack per day. (Tr. 241.) She reported having auditory and visual hallucinations. (Tr. 243.) Her recent memory appeared grossly intact, but her immediate recall was significantly impaired while her remote memory was mildly impaired. (Tr. 244.) She was ascribed a GAF score of 35.[2] (Tr. 245.)

On January 27, 2006, Joan Williams completed a Mental RFC Assessment form and a Psychiatric Review Technique form. (Tr. 261-78.) Ms. Williams found Schmidt-Ress was not significantly limited in eight of twenty categories, found no evidence of limitation in five

---

[2] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. A person who scores in this range may have illogical or irrelevant speech, and may avoid friends, neglect family, and be unable to work. *See Diagnostic and Statistical Manual of Mental Disorders*, *supr*a, at 34.

5

categories, and moderate limitations in seven categories. (Tr. 261-262.) She was moderately limited in her ability to work in coordination or proximity to others without being distracted, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. *Id*. Jennifer Swain, Psy.D., reviewed all the evidence in the file on August 9, 2006, and affirmed Ms. Williams's assessment. (Tr. 298.)

On February 16, 2006, Schmidt-Ress was sent for a physical consultative examination to Ravinder Nath, M.D. (Tr. 279-85.) She told Dr. Nath that she had uncontrolled diabetes for the past seventeen years despite use of an insulin pump. (Tr. 279.) She told him she suffers from depression, hearing loss in the left ear, panic attacks, anxiety attacks, and other pain. *Id*. She reported that, at the time, she smoked two packs of cigarettes, drank one alcoholic beverage, and drank approximately twenty cups of coffee per day. *Id*. Dr. Nath's impression was that Schmidt-Ress had diabetes mellitus with neuropathy, a history of stroke in the past with no motor weakness, chest pain which sounded like esophagitis, a history of depression, and a history of gastritis. (Tr. 280.)

On April 12, 2006, Lynne Torello, completed a Physical RFC Assessment form. (Tr. 286-93.) Ms. Torello concluded that Schmidt-Ress was capable of lifting fifty pounds occasionally and twenty-five pounds frequently. (Tr. 287.) She could also stand, walk, and sit for six hours in an eight-hour workday. *Id*. Her ability to push and/or pull was limited in the

6

upper extremities due to neuropathy. *Id*. She could never climb ladders, ropes, or scaffolds, but could occasionally balance. (Tr. 288.)

On May 2, 2007, Schmidt-Ress was admitted to St. Joseph Health Center in Warren, Ohio, due to diabetic ketoacidosis and intractable nausea and vomiting. (Tr. 301-32.) She was noted to be noncompliant with her medications and as having severe depression. (Tr. 301.)

On May 3, 2007, Rammohan Murthuramalinga, M.D., examined Schmidt-Ress and concluded that she "appears to be noncompliant, indifferent and does not want to hear any advise [sic] regarding the management of her insulins, quitting smoking, etc." (Tr. 318.) Schmidt-Ress was also seen by Harish Patel, M.D., for her psychological impairments. (Tr. 329.) He concluded that she had depression and assigned a GAF score of 50. *Id*.

On May 5, 2006, an eye exam revealed normal muscle function, normal distance with correction and normal visual fields. (Tr. 294-96.) No visual impairment was identified. (Tr. 297.)

On August 8, 2007, a letter from Ms. Taylor of The Counseling Center stated that Schmidt-Ress obtained treatment on thirteen occasions between January 2004 and January 2005, but progress in reducing her anxiety was minimal due to ongoing severe stressors. (Tr. 334.) Her mental status did not show any diminished capacity for understanding or memory loss, and her concentration was satisfactory. *Id*.

***Hearing Testimony***

At the hearing, Schmidt-Ress testified to the following:

- She lived with her boyfriend and his son, but not with her two children. (Tr. 359.)

- Her last job was at Taco Bell, but lasted only two weeks as she was hospitalized. (Tr. 361.)

- She was diagnosed with Type I diabetes when she was ten years old. (Tr. 363.)

- She recently reduced her smoking to five cigarettes daily. *Id.*

- She was no longer using the insulin pump, but was giving herself insulin shots seven times daily. *Id.*

- She was not seeing an endocrinologist because she could not afford it. (Tr. 365.)

- She still drives an automobile, but rarely goes grocery shopping. (Tr. 366.)

- Her medications included Ativan, Wellbutrin, Celexa, Plavix, Anafranil, Seroquel, Lamictal, Humalog, and Lantus insulin. She usually receives samples of the medications from her doctor. (Tr. 366.)

- On a typical day, she gets up at 7 a.m., eats breakfast, checks her blood sugar, checks her email, watches television, and attempts to clean the house. (Tr. 369.)

- She could not lift more than ten pounds and could not sit for any longer than fifteen minutes at a time. (Tr. 370.)

The ALJ posed the following hypothetical to the VE:

Okay, I'd like to pose several hypotheticals also concerning Claimant's age, educational, and work experience. Let's assume this person is limited to simple instructions, should avoid direct interaction with the general public, should avoid changes in the work setting, should avoid intensive supervision, and avoid close interaction with co-workers. Let's also assume that this person would be limited to light work, occasional postural limitations, but never climb ladder, rope or scaffolds, should avoid repetitive reaching – or continual reaching, let's say continual reaching. Would that allow performance of past work or other work?

(Tr. 374-75.)

The VE testified that such an individual could not perform Schmidt-Ress's past relevant work. (Tr. 375.) The VE did, however, identify several jobs that the hypothetical person could perform, including mail clerk, dietary aide, and a variety of assembler positions. *Id.* If a sit/stand option was added to the hypothetical, such a person would be unable to perform the mail clerk and dietary aide jobs, but could still work as an assembler. *Id.* The VE further

testified that a required fifteen minute break every two hours would be acceptable, but additional breaks would eliminate all jobs. (Tr. 376.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Schmidt-Ress established medically determinable, severe impairments, due to "diabetic mellitus with neuropathy, degenerative joint disease in the left knee, shoulder strain, bipolar disorder – depressed with psychotic features, and a panic disorder with agoraphobia. (Tr. 20.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Schmidt-Ress is unable to perform her past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Schmidt-Ress is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence

could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Schmidt-Ress claims the ALJ erred by: (1) failing to articulate a valid basis for rejecting the treating and consulting source opinions; and, (2) finding that she was capable of performing jobs that exist in significant numbers in the regional and national economies. Each will be discussed in turn.

### *Treating and Consulting Physician Opinions*

Schmidt-Ress asserts that the ALJ erred when he declined to give any weight to the opinion of her therapist, Ms. Taylor, who determined that Schmidt-Ress was incapable of securing and holding employment due to her current mental health issues and the resultant exacerbation of her physical symptoms. (Pl.'s Br. at 9.) The ALJ found that Ms. Taylor's opinion was "not supported by and was inconsistent with the overall medical and other evidence of record." (Tr. 26) The ALJ further noted that he was not bound by such an opinion, as the ultimate issue of disability is reserved to the Commissioner. *Id*.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20

10

C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

The opinion of a treating physician must also be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

Further, a medical source's conclusion that Schmidt-Ress is "unemployable" does not constitute a medical opinion, and, therefore, is not entitled to any special weight. An opinion that a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute

---

[3] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

a medical opinion. 20 C.F.R. § 404.1527(e). An ALJ need not give any weight to a conclusory statement of a treating physician that a claimant is disabled, and may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec' of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(e)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). As such, the AL did not err by failing to assign any weight to Ms. Taylor's opinion that Schmidt-Ress was unable to secure and hold employment.

Schmidt-Ress further argues that the ALJ failed to explain the weight accorded to the opinion of Dr. Brown, a consultative examiner. (Pl.'s Reply at 2.) Dr. Brown opined that Scmidt-Ress "does not have the ability to withstand the normal stressors of the work environment due to her mood instability with psychotic features." (Tr. 245.) She ascribed Schmidt-Ress a GAF score of 35. *Id*. Schmidt-Ress contends that the ALJ's failure to explain the weight ascribed to this particular portion of Dr. Brown's opinion was error, as it violated the Agency's procedures. (Pl.'s Reply at 3.)

Pursuant to the regulations:

(i) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency

12

> medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. See § 416.912(b)(6).
>
> (ii) When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(f)(2)(i) & (ii).

The ALJ twice recites the aforementioned opinion of Dr. Brown that Schmidt-Ress does not have the ability to withstand the normal stressors of the work environment due to her mood instability with psychotic features. (Tr. 26-27.) Though the ALJ was not bound to give the opinion of Dr. Brown any weight, an explanation is required. The ALJ did explain that he concurred with the findings contained in two Psychiatric Review Technique Forms and two Residual Functional Mental Assessments completed by State Agency Physicians, which found no more than moderate mental limitations. (Tr. 30.) The ALJ also agreed with some of Dr. Brown's opinion, but ignored that portion related to Schmidt-Ress's ability to withstand the stress of working. *Id*. Though it might have been better if the ALJ specifically addressed this particular portion of Dr. Brown's opinion, the failure to do so does not necessitate a remand. This case is similar to one addressed by the Sixth Circuit, wherein the Court observed the following:

> [T]he ALJ neither misstated nor ignored a treating physician's opinion; he merely failed to explain why he favored several examining physicians' opinions over another's. The regulation at issue in *Wilson* simply does not apply, and there is no

reason to depart from the usual harmless-error rule. *See generally* 5 U.S.C. § 706 (when a court determines whether agency action was lawful, "due account shall be taken of the rule of prejudicial error"); *see, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (refusal to even acknowledge the opinion of a treating physician was harmless error, because physician provided no objective basis for his conclusions and his opinion was contradicted by the weight of the other evidence).

No purpose would be served by remanding for the ALJ to explicitly address the shortcomings of [an examining physician's] opinion and the evidence and methods underlying it. *Cf. Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (citation omitted) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:

> an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted).

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-508 (6th Cir. 2006); *accord Henderson v. Astrue*, 2010 U.S. Dist. LEXIS 25019 (N.D. Ohio Mar. 17, 2010) ("An ALJ can consider all of the evidence without directly addressing in his written decision every piece of evidence submitted by a party, but his factual findings as a whole must show that he implicitly resolved such conflicts."); *Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp. 2d 497 (N.D. Ohio 2008) (finding that "[a]utomatic remand" was not warranted where ALJ failed to explain reasons for apparently rejecting an examining physician's opinion and "the usual harmless error standard applies").

Unlike in *Kornecky*, the opinion of Dr. Brown is that of a consultative rather than a

14

treating source, and, as such, the argument for remand even less compelling. The ALJ implicitly discredited Dr. Brown by crediting the opinions of consultative sources Dr. Collins and Ms. Williams – neither of whom found that Schmidt-Ress's mental limitations were so marked as to preclude her ability to withstand the stress of work. While it would have been prudent for the ALJ to say as much, it is clearly implicit in his opinion that he rejected Dr. Brown's opinion as inconsistent with the other opinions of record. The ALJ's failure to discuss this specific aspect of Dr. Brown's opinion was harmless, and the Court sees no reason to remand this matter simply so the ALJ can expressly state what is obvious from the record and his analysis. As such, Schmidt-Ress's first assignment of error is without merit.

***Significant Number of Jobs***

Schmidt-Ress also contends that the ALJ erred by finding that she was capable of performing a significant number of jobs in the regional and national economies. Specifically, Schmidt-Ress's argument is based on her allegation that the ALJ relied on a hypothetical response that failed to accommodate her alleged need for seven breaks during an eight-hour workday to take insulin shots. (Pl.'s Br. at 11-13.)

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well-established that an ALJ may pose hypothetical questions to a vocational expert and is

required to incorporate those limitations accepted as credible.") However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

The VE testified that two fifteen minute breaks, in addition to the lunch break, during an eight-hour day was fairly typical and would not be work preclusive. (Tr. 375-76.) However, an additional two breaks, he testified, would not be acceptable and preclude all jobs. *Id.* Schmidt-Ress testified that she took two insulin shots at 7:00 a.m., one shot at 12:00p.m., one shot at 3:00 p.m., one shot at 6:00 p.m., and two shots at 10:00 p.m. (Tr. 373.) As such, it appears that Schmidt-Ress would need to take only two breaks for this purpose in addition to her lunch during an eight-hour workday. The ALJ posed such a hypothetical to the VE, who found such a requirement did not eliminate available jobs. As such, Schmidt-Ress's second assignment of error is also without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

                                                                                   s/ Greg White
                                                                                    U.S. Magistrate Judge

Date: March 30, 2010